Mr. Justice Oltn
stated the case, and delivered the opinion of the court:
A bill in equity was filed in this case to enforce a landlord’s lien.
The bill sets forth in substance that the complainant, on or about the 1st day of May, 1873, executed a lease in writing of certain real estate and premises described in said lease to the defendant, for the period of five years from the 1st of May, 1873, for the consideration of the yearly rent of twelve hundred dollars, to be paid by the defendant in equal installments on the last day of every month during the term. That the defendant took possession of said premises on or about the 1st of May, 1873, and has continued to occupy the same up to the time of the filihg of the present bill.
The plaintiff further states in her bill that the defendant is about to remove all his goods and merchandise from said *569 store, having so declared his intention to her, and is at this date, October 29, 1873, actually engaged in the removal of such goods and merchandise, thereby tending to defeat the lien of the plaintiff upon said goods and merchandise for rent to become due hereafter. That the rent to become due, during the unexpired term of the said lease, will, as the plaintiff claims, amount to the sum of $5,100, which amount the deendant has bound himself to pay in the manner above specified.
The plaintiff then prays that the defendant be ordered and decreed to pay the monthly installments of rent during the balance of his term as the same shall become due.
2d. That an attachment may be issued and laid upon the goods and merchandise of the defendant, subject to the lien of the plaintiff, for the amount of rent due and to become due between the time of filing this bill and the expiration of the defendant’s term.
3d. That she may have such other and further relief as the court of equity can grant.
To this bill an answer was interposed which admits the execution of the lease set forth in said bill, and also of taking possession of the premises as alleged in the bill, in pursuance of the terms of the lease.
The answer then proceeds to state that on or about the 1st of November, 1873, the defendant removed his goods and merchandise from the said premises and vacated the same; and further says that “ before- doing so I gave the plaintiff notice of my intention so to do, at the same time informing her that the said store and premises had become and were entirely untenable. I further state that three months before I left the said store the board of public works of the city of Washington or District of Columbia commenced to excavate the street in front of said store, and did cut down said street several feet f that during’ all the time the trade of the defendant was greatly injured, and fell off to such an extent as to entail upon him a daily loss, and that finally, when the sidewalks were cut down and destroyed, said store ceased to be accessible, and all trade ceased; that in this emergency the defendant applied to the plaintiff to do some *570 thing with the property to make it available, and she absolutely refused to do anything. And thereupon the defendant vacated the premises and removed his goods.
I have now, perhaps, stated all the facts necessary, in order to raise the question argued at much length before the court.
The question arising is as to the proper construction of the twelfth section of the act of Congress passed February 22, 1867, (see Statutes at Large, vol. 14, page 104.) Section 12 of the act is as follows:
“ Beit further enacted, that the power claimed and exercised as of common right by every landlord of seizing by his own authority the personal chattels of his tenant for rent-arrear is hereby abolished, and instead of it the landlord shall have tacit lien upon such of the tenant’s personal chattels upon the premises as are subject to execution for debt, to commence with the tenancy, and continue for three months after the rent is due, and until the termination of any action for such rent brought within said three months. And this lien may be enforced—
1st. By attachment to be issued upon affidavit that the rent is due and unpaid, or, if not due, that the defendant is about to remove or sell all or some of said chattels; or—
2d. Byjudg’ment against the tenant and execution to be levied upon said chattel's or any of them, in whosesoever hands they may be found ; or—
3d. By action against any purchaser of any of said chattels, with notice of the lien, in which action the plaintiff may have judgment for the value of the chattels purchased by the defendant, but not exceeding the rent-arrears and damages.”
The marginal note to the case of Fowler vs. Rapley, 15 Wallace, 328, states that "Under the landlord and tenant law, as regulated by the act of Congress of February 22,1867, the 'tacit lien’ given by the act upon certain of the tenant’s personal chattels, on the premises, attaches at the commencement of the tenancy to any such chattels then on the premises, and continues to attach to them in whosesoever hands the chattels may come during the time allowed by the act for instituting proceedings, unless the lien is displaced by removal *571 .of the chattels, or by the sale of them in the ordinary course of mercantile transactions. It is not displaced by a sale of the stock in mass, while they (it) remain in mass, to a person who knew that the premises were leased, and continues to occupy them, selling in the ordinary way the goods, nor even by a second sale of that sort.”
This note of the reporter gives a very imperfect idea of the point decided by the court. To enable that to be understood, I will quote from the opinion of Justice Clifford the material facts in the case, upon which the decision of the court seems to have been based:
Hall & Stackpole, on the 1st of July, 1867, rented a wharf of Rapley, to be used for ice-houses and for a lumberyard, at the monthly rent of $100. As lessees, they took possession of the premises, and carried on there the business of buying and selling lumber and ice until the 23d of November following, when they sold out their entire stock of lumber and ice to J. M. Perkins. Perkins took possession of the premises and the stock embraced in the sale, and continued the business until the 14th of the succeeding January, when he sold all that remained of the stock, and delivered the same to the plaintiff, Fowler.
At the time of the first sale, rent was due from the lessees, from the 1st day of August of that year. On the 24th of January of the next year the lessor sued the lessees for rent in arrear, to wit, for one hundred dollars per month, for the months of August, September, November, and December of the previous year, and Eapley caused an attachment to be issued, in pursuance of section 12 of the act of Congress of 1867, to secure the payment of the rent then in arrear; that the property attached was a part of the stock which had belonged to Hall & Stackpole, and by them sold to Perkins, and by Perkins sold to the plaintiff, Fowler; and that this property had not been removed from the premises at the time of the serving of the attachment.
Upon this state of facts Fowler, the plaintiff, lessee of Perkins, who was the lessee of Hall & Stackpole, brings a suit of replevin against Eapley, and the marshal who executed the writ of attachment, to recover possession of the goods. *572 and chattels attached for rent in arrear and due at the time of issuing the writ of attachment.
It will be seen that upon this my statement of facts but two questions of law were necessarily involved in the case of Fowler vs. Rapley:
1. Did the assignment of the lease from Hall & Stackpole and a sale of the personal property in bulk upon the premises to Perkins, made at a time when rent was actually due and in arrear, and a similar transfer of the lease and stock in trade by Perkins to Fowler, divest the landlord (Rapley) of that “tacit lien ” given him by the statute to secure the payment of his rent; and the court very properly held that such assignment of the lease and sale of the personal property in bulk did not divest the landlord’s lien.
It may be observed in this case of Fowler vs. Rapley there was no evidence tending to prove that Rapley assented to any assignment of the lease from Hall & Stackpole to Perkins, or from the latter to Fowler, or that he accepted either of them as his tenants; and, further, that the attachment was issued for nothing beyond the rent actually due and in arrear at the time it was issued.
It will, therefore, be seen that the facts in the case of Foro ler vs. Rapley, and consequently the decision of the court based thereon, afforded no aid to the solution of the question involved in the present case.
That question is this: If A rents to B a store and premises for a period of fifteen or twenty years, to be occupied for the sale of merchandise, agreeing to pay for the same an annual rent of $1,200, payable in monthly installments of $100 each? and givesnoticeto his landlord of his determination to quit and surrender the premises at some time before the expiration oi the lease, having paid all the rent due or in arrear for any portion of the time he has occupied the premises, may he be 'proceeded against by attachment served on goods, if sufficient can be found to pay all the rent to accrue during the continuance of the lease'? Such a proceeding, to say the least of it, would be a most extraordinary and summary mode of enforcing the specific performance of a contract between landlord and tenant. It is vain to inquire what is to be done with all the property attached, sufficient, probably, to pay a rent oí *573 $1,200 per annum for five or ten years. What is to become of the rented premises for the un expired term ? May the 1 an dlord re-enter when deserted by the tenant, or rent them again, or must the court take possession and rent the premises, and hold the proceeds for the benefit of the parties interested 1 The only embarrassment in this question arises out of the first provision of section 32, viz, the landlord may enforce his remedy by attachment, to be issued upon affidavit that the rentis due and unpaid; or, if not due, that the defendant is about to remove or sell all or some of said chattels.
It will be seen that, by the strict letter of this provision, if the tenant in this case was selling, o r proposing to sell any or all of the goods upon the premises subject to execution, an attachment might be issued against him for selling any part of such goods. This, to say the least of it, is a very singular provision in reference to rentin g of premises which were rented for the sole purpose of using the house and premises as a retail shop of merchandise; for upon this construction of the act the sale of one article from his shop would work a forfeiture of his lease, at the option of the landlord.
We think the language of this most extraordinary statute for the relief of tenants against the arbitrary process of distress by the landlord may be satisfied by holding that the landlord may issue an attachment for any rent due and in arrear; and may also issue an attachment in cases where the tenant has occupied the premises for some part of the time, during which an installment of rent accrues. For instance, if the rent is payable monthly, and the tenant threatens to remove all his goods or chattels from the premises, the landlord may issue an attachment for the rent that has accrued and which will become due and payable on the day appointed in the lease for its payment.
The decree dismissing the bill entered at the special term by Justice Wylie is affirmed.